Very well. So we'll start out with 15 minutes per side, and the appellant can go ahead and reserve time for rebuttal if you wish. If I may, Your Honor, four minutes should suffice. Very well. You may proceed. May it please the Court, Joshua Bernstein for Vernon Smith. As you're aware, we filed a five-issue brief. The State and Mr. Smith are in agreement on four of those issues, so I'll be focusing my argument on the first issue, which addresses the ruling on the traffic stop and the suppression issue. The essence of our argument here is that the Court entered a ruling denying the motion to suppress that was against the manifest way to the evidence. The testimony at the suppression hearing established clearly that Officer Perez and his partner did not engage in any sort of chase that would have served as an additional factor justifying a reasonable suspicion that Mr. Smith was armed and dangerous such that his furtive movements would have justified a search. As the testimony at the What's the standard of review with regard to that question? Whether there was a chase or not. Well, Your Honor, it's essentially the manifest way to the evidence. You must defer to the trial court's ruling, but when the trial court's ruling is against the evidence, you may certainly review it. And, of course, the legal question as to the Court's conclusion is de novo. And here, basically what Officer Perez testified was that he saw Mr. Smith run a stop sign, a routine traffic stop situation. He and his partner followed. They curbed Mr. Smith about two blocks afterward. Mr. Smith stopped immediately and at that point, with their spotlight on Mr. Smith's car, they approached. They saw Mr. Smith making a gesture at the back pocket of the car on the passenger seat. The officer equated the curbing with the same thing as putting the lights on and the car immediately pulled over. Didn't he kind of say that? That's exactly what he said, Your Honor. I think really the essential issue here is the Well, that has to go. That part has to go for you to prevail. We have to come to the Absolutely, Your Honor. And to the extent there was any ambiguity in the testimony on direct on cross-examination, defense counsel elicited testimony from the officer that essentially said, when you curbed the vehicle, he pulled over immediately. Is that fair to say? Yeah. There goes the chase. There was no chase. The trial court was manifestly wrong in determining that there was a chase. So the question becomes does the alleged furtive movement give the officers justification to pull him out of the car and search for a weapon? Is there a reasonable suspicion that he's armed and dangerous and has access to a weapon? And the case law we cited manifestly shows that it is not. In the cases in which there was any kind of justification for a search, Michigan v. Long, people v. Collier, even Flores, which the state cited, there were additional factors beforehand that gave the officers a reason to believe that these people might be dangerous. In Long, it was a large hunting knife in plain view. In Collier, when the officers approached the vehicle, they saw the largest pistol bullet they'd ever seen in plain view, leading them to reasonably believe that there was a gun. In Flores, it's kind of complicated, but it boils down to the fact that they saw two car stereos that had apparently been ripped out of cars in the back seat. They approached, and the defendant lied about what he had been doing and also engaged in furtive movements apparently to hide a screwdriver that the officers saw. Here, the officers walked up. Mr. Smith had been going for the pocket on the back of the seat. We don't dispute that. The officers didn't see anything in his hands. This gun that was found, they didn't see it. They didn't even see this bag that it was found in. They didn't see any bullets. He was entirely cooperative. The gun was in a bag when they retrieved it out of that pouch? Yes, Your Honor. The testimony was that it was in a purple crown- Oh, that's right. I forgot. Yes, you're right. They didn't see that. All they saw was the hand there. Just like in State v. Johnson, the Wisconsin State Supreme Court case, there's a point at which any movement you make under this kind of rationale here, any movement you make in your car after you've been pulled over will give the police justification to search you, and that's simply not the case. On that basis, we're asking that you reverse the trial court here. And you're asking for a reversal outright? Well, yes, Your Honor. In order to prevail on a reversal of a motion to suppress? Well, if the evidence of the offense is suppressed, there's nothing left, Your Honor. Well, is that something that requires a remand in the trial court and the State have the opportunity to proceed in whatever way they choose to proceed? I think there's authority out there that says that. You're not agreeing? Well, Your Honor, be that as it may, what would the State do? The State had its opportunity. Did the State put up this witness? The State questioned this witness. No, I'm just asking from a procedural standpoint. Oh, I'm sorry, Your Honor. That's all. That's all I was asking. Well, there's also the matter of judicial economy and the fact that, you know, Mr. Vernon Smith has been in jail now for a couple of years on an offense that he manifestly should not be in jail on. But that's the essence of our argument. Unless Your Honors have any further questions, we will not belabor the point as in the previous case. Thank you, Constance. Thank you, Your Honor. You can have an extra ten minutes in your next case. Thank you, Your Honor. Okay? Okay. Good morning, Your Honors. May it please the Court, my name is Leslie Billings on behalf of the people of the State of Illinois. Your Honors, in reviewing a motion to quash arrest and suppress evidence, the reviewing court gives deference to the trial court's finding of fact unless those findings are against the manifest weight of the evidence. The determination of whether suppression was proper is a legal question which is reviewed de novo. Further, the appellate court may affirm the trial court's ruling on any basis, regardless of whether or not that basis was relied on in the trial court's decision. Here, the facts presented at the motion to quash arrest and suppress evidence support affirming the trial court's denial of the defendant's motion. The officers in this case had specific articulable facts in addition to the defendant's furtive movement to justify searching the passenger compartment of that automobile. We have a traffic violation that occurs at approximately 1.30 in the morning. Using his squad car lights in a marked vehicle, Officer Perez pulls the defendant over. Once the defendant has pulled over, he shines his headlights from the police car as well as a spotlight into the back of the defendant's vehicle window. Officer Perez, who is then in uniform, approaches the vehicle. Once Officer Perez gets within three feet of that vehicle, the defendant's response at that moment is to then take his arm and reach around behind the passenger side of that automobile. Ms. Billings, would you agree that if this factual conclusion that there was a chase is against the manifest weight of the evidence, is there sufficient evidence after that to support a reasonable articulable suspicion that a crime had occurred? Yes, there is. And the trial court discussed that in the trial court's report. Without the chase? Yes. The trial court stated that. And the circumstance of that is they're approaching this car. So first we have the officers approaching this car. Then there's this sort of movement, with the officer being very well aware of the officer approaching this car. So what the state is saying is that in response, it seems as if in direct response to the officer approaching this car, when the officer becomes within three feet of the vehicle and in response to this broad display of police authority by Officer Perez, it's at that moment that he then reaches around into this back compartment of that seat. What case suggests that a furtive movement, plus the idea that it's done in the presence of an officer approaching, makes it reasonable articulable suspicion that a crime just occurred? Well, reasonable articulable suspicion is based on the officer's conduct and the courts also looked towards the officer's testimony. Michigan v. Long stated that the search of the passenger compartment of an automobile limited to those areas where a weapon may be placed or hidden is permissible if the officer has a reasonable belief based on specific and articulable facts that cause the officer to believe that the suspect may gain immediate control of weapons. Was that the case with the knife, or is that the one where the driver went over to the ditch and he was intoxicated or may be intoxicated? What are the other facts in Long? It wasn't just a movement. Well, no, that is correct. But I'm really citing Long for the principles of the law that basically state that when an officer has a reasonable articulable belief that a defendant may gain access to weapons, that the search of that vehicle is authorized. And I think also what we have to look at in this case is the type of search that was conducted. Officer Perez did not use this furtive movement and the circumstances surrounding this furtive movement as a reason to go in and search the driver's area and under the seat and in the backseat and in the trunk, and he did not risk the defendant. This was the most minimally invasive search that Officer Perez could conduct in order to maintain his safety and the safety of Officer Hagen, as well as ensuring that he was not putting the defendant in the vehicle with a weapon. Counsel, I have a question. So when the defendant was putting his hand initially behind the passenger seat, he didn't have anything in his hand, correct? He saw his hand reach around, that's correct. But there was nothing in his hand? Correct. And then when he removed it, there was nothing in his hand? Correct. So what was the officer thinking that he was going to find, since there was nothing there? Well, I think it would be unreasonable to expect the officer to... What was the suspicious activity leading him to believe he might discover? Let me put it that way. Well, I think the officer, it's reasonable to understand that the officer knows that behind, anybody who's ever been in the backseat of a vehicle knows that what is behind that seat is a pouch. And the officer, the defendant, made a movement specifically for that pouch just as the officer was approaching. Could have had his wallet there, though, right? The point is that Officer Perez didn't know what was in that pouch. He didn't know what to expect when the defendant pulled his hand out or put his hand into that pouch. The alternative in this situation would then be for Officer Perez to ignore what he saw and simply go back to his vehicle and write a ticket for a traffic violation. But don't the cases involving simply furtive movements indicate that if we're going to base reasonable suspicion on the mere furtive movement, then really everybody that ever does anything once the officer comes up to their car can be searched, or the car can be searched? I understand. In this case, though, we have more than the furtive movement. We have what the furtive movement was, and specifically we have to look at when this furtive movement takes place. What case could you possibly direct us to, though, that would rely on a furtive movement for reasonable suspicion? A furtive movement alone. A furtive movement alone is not enough. Okay. So you're adding this other thing about that it was done while the officer was walking up. Exactly. Is there a case that says that? No, I don't have a case particularly on point for that. But, again, the principles of law state that when there is an articulable fact taken together with the inferences from those facts, it leads an officer to believe that a defendant may gain access to weapons that he can conduct a limited search for his own safety. Do you agree with counsel that when the officer said curving was basically the same as turning on the lights, his MARS lights, that that was the same thing? The testimony at the motion was that that is correct. When he turned on his lights, that is when he curbed the vehicle. Yeah. So was there a chase or not? Well, the trial court interpreted the two blocks that it took defendant to stop as a chase. Based on what? Well, the trial court acknowledged that it was only seconds for the defendant to come to a stop, but the fact that it took two blocks, three milliseconds, that was considered a chase. But later, I mean, you just agreed that the officer's testimony said that curving was the same as when we put our lights on. Correct. So where is this chase? I think part of the testimony was that after the lights went on, it took two blocks for a defendant to come to a stop. Well, I think you just backtracked. That was on direct examination. On cross-examination, Officer Perez stated that the defendant pulled over immediately. Well, it clarified his testimony, didn't it? He said that they were one and the same. The lights went on. That's what I mean by curving. Correct. When they took the defendant and the passenger out of this car, they handcuffed them, didn't they? Am I wrong about that? They took them to the back of the car and put them in handcuffs? Your Honor, what they did is they took the defendant and his companion into the back of the squad car. They had them stand by the back of the squad car. Once the search was conducted and Officer Perez found the loaded handgun in that passenger compartment, along with the 16 live rounds of ammunition, they then handcuffed the defendant. It was not until after that search was conducted and after they found what they found that they placed the defendant in handcuffs. Well, according to—I think there might be some question about that. I think that Justice Palmer's recollection of the evidence is that they took them out of the car, handcuffed them, then they went back and searched that pouch. I think he's correct in that. Okay. I believe Officer Perez specifically stated that it was not until after those items were found that he handcuffed the defendant. Well, we'll take a look at the record, but is it a relevant consideration whether they were handcuffed at that time or not? Does it matter? Well, it certainly shows that Officer Perez was concerned only with that passenger compartment before he placed the defendant under arrest. It shows that the detainment was minimal and that he only placed the defendant under arrest after he found what was in that passenger compartment. And the pouch area was the only area that they looked into? The pouch area was the only area that they searched. They didn't search any other area of the car. They did not pass down the defendant. They searched only the area of the car where the officer found that herd of moose. I think the question about the timing of the handcuffing relates to the second officer who testified, Officer Thomas. I think he's the one that said they were removed from the car, handcuffed, and then his partner looked or went into the pouch area. Anyway, I'm just mentioning that. Well, according to Perez, if I have this right, according to Officer Perez, Officer Hagen removed Thomas from the car. They moved the defendant, Mr. Thomas, to the rear of the car and handcuffed them together and put them in the squad car. Officer Perez specifically testified at the motion that he did not handcuff the defendant until after he recovered the items that were in the back passenger compartment of that vehicle. Oh, you know what? It's probably – I misspoke earlier. Thomas is not the officer. That's the person. Hagen is the partner. Perez was the – Yeah, no. There was a gentleman in the car who testified. He might have said they were handcuffed. The defendant's companion stated that. Yes, exactly. He might have said that. Yes, that is correct, Your Honor. Is there a case, though, that you could rely on for your suggestion that – let's forget about the chase part. You're saying there's more here than a furtive movement once we're in the car? Well, I think as we're leading up to the car, there's more than furtive movement. What is it? Well, as I stated, it was the fact that there is this broad display of police authority as the officer is approaching this vehicle. They're in a marked car. He's in uniform. What case, though, says what you're saying, that the broad display of police authority relates to whether there's a reasonable suspicion that – I don't have a case that speaks to the broad display of police authority,  but what other case would say that a surrounding circumstance is the broad display of police authority? As far as the broad display of police authority, that's my interpretation. That is what the State is saying, that these are part of the other factors that we're looking to in determining if the search of that passenger compartment was reasonable. Is there a case that says that? I don't have a case stated in my brief that speaks to the broad display of police authority, no. Well, in any case where there's a stop, once the MARS lights go on, there's been a display of police authority. Isn't that correct? Well, that is correct. So what you're saying would apply to every case. We're also looking at the fact that just as Officer Perez is approaching this vehicle, just as he comes within three feet of the vehicle, that's when he sees defendants reach around into that passenger compartment. It certainly wouldn't be reasonable for Officer Perez to simply ignore that and go about writing a traffic ticket, leaving this person in the vehicle with a loaded weapon. Well, let's go back a bit. What case would support the idea that it was reasonable for the officer to assume that he was putting a gun in there or rearranging a gun or doing something with a gun when he testified that he saw nothing in his hand at the time and yet the gun ends up being in a purple Royal Crown bag. Not Royal Crown. Crown. Yeah. I don't know. Do you know what I'm saying? Sure you don't know. The ammunition was found in that bag. The weapon I believe was found separate from that bag. Okay. But we have the officer saying he saw nothing in his hand. So how do you get to the reasonable suspicion then that he saw that there's a gun in there? Because of the pouch that's there. And the fact that there was a loaded gun in that pouch. There's no testimony about a pouch until it's recovered. I'm asking, what's the reasonable suspicion based on the officer seeing him gesture into the pouch but he says he doesn't see anything in his hand? Well, that's correct. But it would be my position that it doesn't even matter if there's nothing in his hand because what Officer Prez is concerned about is what is in that pouch? What is the defendant reaching for? Why is he making that movement into that pouch right while I'm approaching this vehicle? So it's a timing question for you. Let me ask you a question that you probably don't want to answer. Does the state have a position in the instance that this court were to find that the motion should have been granted as to whether this matter should be remanded or not? Or would we just be reversing outright? Well, the state would ask that it be remanded. What purpose would that be? What would happen in the trial court if we remanded it? There's nothing left. There's no evidence left. I understand. So what's going to happen in the trial court? Analy? I think there's case authority one way or the other that the parties could possibly enunciate. But I don't have it on me right now. Skipping past that, let me just ask you, counsel began his argument by indicating that the parties were in agreement on all the other arguments in the briefs. Is that the case? Well, as far as the Aguilar issue, we would just like to make a record that the defendant was charged as a class 2 offense, not a class 4 offense. So we do find that that conviction was legal, proper, and valid. So you disagree on that one point? Correct. Yes. Okay. All right. Anything else? I ask you to affirm the decision of the trial court. Thank you. Thank you. Counsel? Thank you, Your Honor. Briefly, I apologize on the Aguilar issue. Burns is pending in the Illinois Supreme Court, and we think that would be determinative here. I just very briefly want to touch on a couple of things that counsel said. This idea that approaching the car is some sort of element in the analysis where there's a furtive movement. In every one of these cases, the police approached the car. That's how they saw the furtive movement. That cannot be a factor here. If that's the case, it guts the entire Fourth Amendment, because every time the police approach a car, they'll have grounds if someone moves. So can you clear up this factual problem that we seem to have with regard to the handcuffs? Because counsel, Ms. Billings is correct that there seems to be a discrepancy, at least in the briefs, as to when this happened. Yes, Your Honor. I looked at the State's brief and my brief. And unfortunately, I don't have the entire record or all of my notes with me. But my citation to the record, I cite to the record, they cite to the record. I did look through and I noticed that Thomas, who was the passenger, testified. I know explicitly he testified that they were handcuffed together once they were taken out of the car. And I'm afraid I don't have the citation. They were taken out together? I thought they took out the driver first, put him against the car, and then they woke up Thomas. We'll peruse the record. We'll figure it out. Yeah, and I apologize if it's not clear. But they were handcuffed together and put in the cruiser at some point. Does it matter? No, Your Honor. Does it matter when they're handcuffed? No, Your Honor. It doesn't really matter, does it? The issue here is everything that happened at the time of the stop. So unless you have any more questions, we ask that you reverse and find a mistress in this favor. All right. Thank you, Your Honors. All right. Well, thank you very much. We appreciate today's arguments and the excellent briefing. We'll take the matter under advisement and the Court's adjourned. Thank you.